```
                   UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION


    CHRISTEL JOHNSON,                  :
                                       :
                 Plaintiff,            :  Civil Action
                                       :  No. 1:23-cv-794-MSN-JFA
          v.                           :
                                       :
    NAVY FEDERAL CREDIT UNION,         :  September 1, 2023
                                       :  9:51 a.m.
                                       :
                 Defendant.            :
                                       :
    ............................... :


                   TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
                   UNITED STATES DISTRICT JUDGE

 APPEARANCES:

   For the Plaintiff:         HENNESSY LAW FIRM PLLC
                              Thomas Francis Hennessy, Esquire
                              4015 Chain Bridge Road
                              Suite G
                              Fairfax, VA 22030

   For the Defendant:         ISLER DARE PC
                              Edward Lee Isler, Esquire
                              1945 Old Gallows Road
                              Suite 650
                              Vienna, VA 22182

   Also Present:              Kayla Robinson, Esquire

   Court Reporter:            Diane Salters, B.S., CSR, RPR, RCR
                              Official Court Reporter
                              United States District Court
                              401 Courthouse Square
                              Alexandria, VA 22314
                              Email: Dianesalters.edva@gmail.com
                              Telephone: (301) 338-8033

 Proceedings reported by machine shorthand.  Transcript produced
 by computer-aided transcription.
```

*Proceedings*

1          THE COURTROOM DEPUTY:  *Johnson v. Navy Federal Credit
2  Union*, Case Number 23-cv-794.  Will the parties please note their
3  appearances for the record?
4          MR. ISLER:  Edward Lee Isler with Navy Federal Credit
5  Union, the defendant; and with me is Kayla Robinson, in-house
6  counsel for Navy Federal Credit Union.
7          THE COURT:  Good morning.
8          MR. HENNESSY:  Yes, Your Honor.  Tom Hennessy
9  representing the plaintiff, Christel Johnson.
10         THE COURT:  Good morning.
11         This matter comes before the Court on Defendant's
12  motion to dismiss, and the matter has been fully briefed, and
13  I've had an opportunity to review the docket and the pleadings.
14  I'll hear any argument you have, Mr. Isler.  I don't need to hear
15  everything that's already been put in the pleadings, but anything
16  you want to highlight or emphasize, I'm happy to hear at this
17  time.
18         MR. ISLER:  Thank you, Your Honor.  I completely
19  understood.  I've tried to script out my comments to be
20  relatively brief.  As I mentioned, I'm Edward Lee Isler
21  from Isler Dare in Tysons Corner, Virginia, and representing
22  Defendant, Navy Federal Credit Union.
23         As you are aware and just mentioned, Your Honor, we're
24  here on Navy Federal's motion to dismiss under 12(b)(6), and I am
25  confident that you and your clerks have read the briefs, so I'm

going to try to be relatively brief.

Christel Johnson was an employee at Navy Federal Credit Union for a number of years until she resigned in 2019. More than a year prior to her resignation, she encountered some difficult interactions with a coworker, as a result of which she was given a disciplinary warning, known as a memorandum of warning. And this case has a very interesting procedural history -- which I'm not going to go into it; it's all laid out very thoroughly in our papers -- but the operative complaint before the Court today is the plaintiff's first amended complaint, which is ECF Docket Number 11, and that complaint asserts one count under 42 U.S.C. § 1981, disparate treatment based on the plaintiff's race. And although some of the phrases used in the amended complaint suggested that she was possibly asserting a claim for racially hostile work environment or constructive discharge, in her opposition brief, she confirms that she's not pursuing those claims. So to the extent that the Court or my esteemed opposing counsel, Mr. Hennessy, believe otherwise, I'd certainly be glad to address those claims directly, but we're really here on a single claim of disparate treatment under Section 1981. And as the Court is well aware, in order to advance a claim of discriminatory disparate treatment, a plaintiff must allege facts that establish, among other things, that she was subjected to an adverse employment action, and that such adverse action occurred under circumstances giving rise to

1  an inference of discrimination.

2          In this case, there is nothing even remotely close to
3  an adverse employment action.  In an attempt to make out an
4  adverse action, she cites to various unpleasantries and
5  difficulties that she contends she experienced in the workplace,
6  and including some difficult interactions with a coworker,
7  Michelle Hirsch.  But as the Fourth Circuit has repeatedly held,
8  and as Your Honor held last year in the case of *Salmoiraghi v.*
9  *Veritiss* -- and that decision is found at 2022 WL 1036769 --
10 those kinds of interactions do not constitute an adverse
11 employment action for purposes of a disparate treatment claim.
12 For example, in that *Salmoiraghi* case, Your Honor held that such
13 allegations as stripping the plaintiff of certain advisory
14 duties, not permitting the plaintiff to transfer job sites, and
15 counseling the plaintiff in response to what he perceived as
16 false allegations that had been leveled against him were simply
17 not adverse actions needed to put forth a claim of discriminatory
18 disparate treatment.  Here, Plaintiff's claim of adverse
19 employment action appears to rest primarily upon Navy Federal's
20 issuance to her of a memorandum of warning -- or what Navy
21 Federal calls an MOW -- arising, in part, from her interactions
22 with Ms. Hirsch.  And she cites another Eastern District case,
23 the *Hinton* case, to argue that this type of counseling memorandum
24 can be considered an adverse employment action if it could
25 possibly lead to other discipline; however, as we noted in

footnote 2 of our opening brief, her citation to *Hinton* is really misplaced, because even in that case, the court squarely rejected the argument that a disciplinary warning could be viewed as an adverse employment action based on the mere possibility that the warning could lead to more significant consequences down the road. Indeed, I would suggest that the Fourth Circuit case law could not be more clear, that this type of counseling memorandum does not constitute an adverse employment action sufficient to support her discriminatory treatment claim.

In the *Jensen-Graf* case, which we cite at the bottom of page 5 of our opening brief and at the bottom of page 5 of our reply brief, just coincidentally, the Fourth Circuit considered the plaintiff's claim that being placed on a performance improvement plan -- what employers typically call a PIP -- was in and of itself an adverse employment action, and the Fourth Circuit squarely rejected that argument, finding the complaint failed to state a plausible claim where the plaintiff, quote, failed to allege she received lower pay, was demoted, was passed over for promotion, failed to receive a bonus, or was given significant different responsibilities because she was placed on the PIP. Here, the disciplinary warning received by the plaintiff in the form of the MOW was far less severe than the type of performance improvement plan that the court considered in the *Jensen-Graf* case.

Your Honor, it's also worth noting that the MOW

1   referenced in this case was issued in September 2018, so almost
2   five years ago.  Had the MOW led to more severe consequences,
3   those consequences could be viewed as rising to the level of an
4   adverse action.  Surely, it would have occurred by now, and,
5   surely, the plaintiff would have been able to cite such
6   consequences in her amended complaint.  The fact is there were no
7   further consequences for Plaintiff up until the point that she
8   voluntarily resigned her employment in December of 2019 to accept
9   a position with another employer, making more money.
10          In an effort to conjure up some consequences of the
11  issuance of the MOW, Plaintiff cites to such unpleasantries as
12  not being allowed to work from home or not being invited to a
13  meeting; however, as we outlined on page 5 of the reply brief,
14  these events occurred months before the MOW was ever issued and,
15  therefore, could not be viewed as consequences of the MOW being
16  issued.  And, of course, they're also not the type of allegations
17  that rise to the level of an adverse employment action under
18  well-established Fourth Circuit precedent.
19          The bottom line here is that Plaintiff's disparate
20  treatment claim never gets out of the starting box because she's
21  unable to identify an essential element of her claim, namely,
22  that she suffered an adverse employment action.  Moreover, even
23  if any of these events taken singly, taken collectively could be
24  viewed as an adverse employment action -- they cannot and they
25  cannot -- such action did not occur under circumstances giving

1  rise to an inference of discrimination.

2           This complaint is almost completely devoid of any
3  factual allegations that would suggest the presence of a
4  discriminatory work environment.  She cites only to one difficult
5  interaction with a coworker who accused the plaintiff of, quote,
6  rolling her neck, as evidence of racial discrimination.  That's
7  it.  There is nothing beyond that to suggest any racial animus;
8  and even that episode standing alone is a far cry from any
9  evidence of racial bias on the part of the employer.

10          In my humble view, Your Honor, this is not a close
11 call.  The Fourth Circuit has made clear the type of factual
12 allegations that must be alleged in order to survive a motion to
13 dismiss in a disparate treatment discrimination case; and those
14 types of allegations, including that the plaintiff suffered an
15 adverse employment action, are completely absent here.  And for
16 these reasons and for those stated in our briefs, we respectfully
17 request that the Court grant the motion to dismiss.

18          Finally, Your Honor, we also respectfully request that
19 the Court not give the plaintiff leave to amend.  As outlined on
20 pages 12 and 13 of our opening brief, there is a limit in the
21 Eastern District to the number of bites a plaintiff may take at
22 the apple.  Here, Plaintiff is essentially on her third bite,
23 having filed an initial complaint in 2020, another complaint in
24 2022, and then an amended complaint in this case; and Navy
25 Federal should not be compelled to endure Plaintiff's fourth bite

1   at the apple, especially when it's abundantly clear there's
2   really nothing more here to be pled.  And I say this with great
3   confidence, Your Honor, because unlike almost any 12(b)(6) motion
4   I've ever argued, in this case, I've already taken the
5   plaintiff's deposition during a prior iteration of the case.  And
6   I mention this not because I'm seeking to cite the deposition or
7   to turn this into a Rule 56 proceeding, but really to underscore
8   that I'm quite confident that there really is nothing else to be
9   added.  Now, if her counsel, Mr. Hennessy, is aware of such
10  facts, maybe he can make a proffer to the Court, but I suspect
11  Mr. Hennessy, who sat through the deposition in March of 2022, is
12  well aware that there's nothing further that can be added.  So
13  for this reason, I ask the Court not only to grant our motion to
14  dismiss, but also to grant it with prejudice.
15              Thank you, Your Honor.
16              THE COURT:  Thank you, Mr. Isler.
17              Mr. Hennessy?
18              MR. HENNESSY:  Yes.  Good morning, Your Honor.
19              THE COURT:  Good morning.
20              MR. HENNESSY:  Yes.  The complaint in this case, as
21  established in the response brief, need only allege facts
22  sufficient to show that the plaintiff has a claim that rises
23  above the mere speculative level; and I think that it's clear
24  from the briefing in this case and the citations to authorities
25  that the Fourth Circuit has recognized that the plaintiff need

1   not plead a *prima facie* case.  Also, the cases make clear that
2   when viewing a complaint on a 12(b)(6) motion to dismiss, the
3   Court should consider the totality of the circumstances; and in
4   this case, there were actual and potential consequences flowing
5   from the reprimand that Ms. Christel Johnson received.  Also
6   that -- and this is particularly noteworthy at this stage, at the
7   pleading stage -- Ms. Johnson has identified -- and this is
8   before discovery was taken because she was not permitted to take
9   discovery in the prior action that I wasn't involved in except to
10  defend her deposition -- that's really outside the scope of what
11  we're doing here today, but it was mentioned by Mr. Isler, so I
12  would indicate that, and I don't think he disagrees -- at least
13  since I was involved in the case, I was unable to take discovery
14  because of deadline issues, which is why we're here today.  And
15  Ms. Johnson, as I understand it, essentially when she was *pro se*,
16  didn't take discovery.  She had been represented by prior counsel
17  who withdrew, and no discovery had been taken by her at that
18  point; discovery was taken by the defendant.

19          But Ms. Johnson has identified in her complaint
20  specifically similarly situated employees who were treated more
21  favorably than her; and I think when viewed together with the
22  disciplinary notice, which itself was an instance of Ms. Johnson
23  being treated less favorably than, in this case, Ms. Hirsch, who
24  was an employee outside the protected class, and the allegations
25  of the complaint was that the altercation that led to the written

1  reprimand being issued by Navy Federal to Ms. Johnson was an
2  altercation initiated by Ms. Hirsch.  Ms. Johnson, for the
3  reasons stated in her complaint, does not believe that Ms. Hirsch
4  was ever disciplined because, in fact, she was subsequently
5  promoted, she was disciplined, and there were significant
6  restrictions that were imposed upon her in the disciplinary
7  notice that she received with regard to contact with vendors that
8  had a downstream effect on Ms. Johnson.  Also, the consequences
9  or potential consequences -- potential consequences, I would
10 say -- of the disciplinary notice, or reprimand, according to
11 NSU's own policies, could include a disqualification of
12 Ms. Johnson from receipt of a bonus, and could also include,
13 according to the terms of the reprimand as alleged in the
14 complaint, her ultimate termination.  So there were significant
15 downstream potential effects.  The reprimand itself represented
16 disparate treatment in that Ms. Hirsch, outside the protected
17 class, initiated the conflict with Ms. Johnson.  She, as far as
18 we know and as far as subsequent events indicate, Ms. Hirsch was
19 never disciplined; Ms. Johnson was disciplined.  And there is
20 also some disparate treatment that is alleged with regard to two
21 specifically identified employees outside the protected class --
22 Aaron Stice, if I'm pronouncing his name correctly, and Wilson
23 Roa -- and that would be with regard to their entitlement to
24 contact vendors, which was withdrawn from Ms. Johnson.
25             Ms. Johnson also alleges in the complaint that she was

1 excluded from meetings.  And she also alleges, as a consequence
2 of the reprimand that she received, that she was given
3 contradictory instructions for which she was subject to
4 discipline.  Other specific instances of disparate treatment,
5 when taken together with the reprimand, satisfies the pleading
6 requirement for showing adverse action on the part of NSU.  And I
7 think at this stage where the standard is not pleading facts to
8 support a *prima facie* case, but, rather, pleading facts that
9 would show that the case rises above the mere speculative level
10 or the case does not consist merely of conclusory allegations and
11 labels, which is another description of a case that would be
12 subject to dismissal under 12(b)(6), this is not that case, and
13 it's not that case primarily because we have concrete discipline,
14 which, standing alone, may not be enough, but we have, in
15 combination with that and connected to that, we have disparate
16 treatment, disparate treatment with respect to Ms. Hirsch and the
17 incident that gave rise to the reprimand, disparate treatment
18 with respect to other employees and certain important rights that
19 they maintained.  They were outside the protected class, and
20 Ms. Johnson was not permitted, for example, to -- she was
21 excluded from certain meetings and not permitted to contact
22 vendors.  So taken together, I think, at this stage, Your Honor,
23 Ms. Johnson has stated a claim that she was subjected to adverse
24 action on the part of NSU.
25          Oh, and in conclusion, Your Honor, I would say

1  Ms. Johnson has specifically described the altercation and has
2  stated that Ms. Hirsch used a racial -- I would not say an
3  epithet -- but she used a racial description of Ms. Johnson's
4  behavior which, I think, on its face at this pleading stage
5  should be taken as a race-based statement or a statement giving
6  rise to an inference of discriminatory animus on the part of
7  Ms. Hirsch for which, again, as far as all of the evidence would
8  suggest and what happened subsequently to the altercation and the
9  reprimand, Ms. Hirsch was not disciplined.
10         Thank you, Your Honor.
11         THE COURT: Thank you. And to be clear,
12 Mr. Hennessy -- I think it is clear in your pleadings -- but you
13 are not a pursuing a hostile work environment claim; your prior
14 statement was simply in reference to the disparate treatment
15 claim that you are pursuing in a single count; is that correct?
16         MR. HENNESSY: That is correct, Judge.
17         THE COURT: Thank you.
18         Well, this matter comes before the Court on Defendant's
19 motion to dismiss under 12(b)(6), and I have had the opportunity
20 to review the pleadings and consider the arguments made. Let me
21 say at the outset that the Court is not considering any of the
22 statements with regard to the deposition of Ms. Johnson. I know
23 they weren't intended for the Court to take them in that light.
24         There is a long procedural history to this case.
25 Again, the Court is looking at this under the standards of

1   12(b)(6), and I accept the pleadings and the factual allegations
2   made in the light most favorable to the plaintiff.  As noted in
3   the pleadings and just now, Plaintiff is not seeking to pursue a
4   hostile work environment claim, and that is clear in the record.
5   And so this really is looking at these claims and determining
6   whether or not the elements have been made sufficiently to pass
7   the plausibility standard for a disparate treatment claim.  And I
8   do find that the motion must be granted.  There's simply no way
9   to view, even taking the facts in the light most favorable to the
10  plaintiff, the memorandum of warning and the other allegations in
11  the complaint as meeting the low standard of an adverse action
12  based on Fourth Circuit case law.  While I fully understand and
13  appreciate that there was a difficulty in the relationship
14  between the plaintiff and others at Navy Federal Credit Union,
15  the memorandum of warning and a written reprimand, it simply
16  doesn't rise to the level of being adequate to meet the adverse
17  employment action standard.
18          And I further find that with regard to the fourth
19  factor, which is whether or not the adverse action, assuming
20  there was one, occurred in circumstances giving rise to an
21  inference of unlawful discrimination, I find that that has not
22  been adequately pled either.  And while I understand the
23  perception that that comment had a racial tinge to it and that
24  the treatment of others as compared to Ms. Johnson raised that
25  inference, I don't think that that can be gleaned beyond a

1  speculative level, which does not meet the basic pleading

2  standards.

3          I also find that dismissal must be with prejudice given

4  the history of this case and the nature of the allegations here.

5  And so I will grant the motion and dismiss the claim with

6  prejudice.

7          Ms. Johnson, I'm glad to hear, if it is true, that you

8  were able to find another job that I hope provides you with

9  better pay and more satisfaction.  I appreciate that there can be

10 difficulties in employment relationships, and sometimes the

11 courts are the best avenue for resolving those matters, and

12 sometimes they cannot be.  So I simply say that to thank counsel

13 for your efforts.  The Court has ruled.

14         (Whereupon, the proceedings concluded at 10:20 a.m.)

16              *        *        *        *        *

18                    CERTIFICATE OF REPORTER

19     I, Diane Salters, hereby certify that the foregoing

20 transcript is a true and accurate record of the stenographic

21 proceedings in this matter.

22                                /s/ Diane Salters
                               _____
23
                               Diane Salters, CSR, RCR, RPR
24                             Official Court Reporter